**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON SAMARITANO,<br><br>    Plaintiff,<br><br>v.<br><br>SEASHORE FAMILY SERVICES, et al.,<br><br>    Defendants. | Civil Action No. 14-2975 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on separate motions to dismiss Plaintiff Jason Samaritano's ("Plaintiff") Complaint by Defendants Seashore Family Services (Seashore),[1] Patrick Roff, Cindy Kelly, Vivian Andersch, and Roberto Fletcher[2] (collectively "Seashore Defendants"), and Defendants State of New Jersey (the "State") and David Arey (collectively "State Defendants"), pursuant to Rule 12(b)(6) and (9) of the Federal Rules of Civil Procedure. (ECF Nos. 3, 7.) Plaintiff opposed both motions (ECF Nos. 6, 9), and Defendants replied. (ECF Nos. 8, 10.) The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendants' motions to dismiss are granted, and Plaintiff's Complaint is dismissed with prejudice.

---

[1] Plaintiff improperly plead Defendant Seashore as "Seashore Family Services." The correct entity, as identified by Defendants, is "Counseling and Referral Services of Ocean County, Inc. DBA Seashore Family Services." As the Court is dismissing with prejudice Plaintiff's Complaint, the Court need not grant leave to amend this error.

[2] Similarly, Plaintiff misspelled Defendant Roberto Fletcher's last name, and the correct spelling is "Flecha."

## I. **Background**

This matter arises out of Plaintiff's participation in New Jersey's Drug Court Program. In October 2011, Plaintiff entered the Ocean County Drug Court Program ("Drug Court"). (Compl. ¶ 9, ECF No. 1.) The Drug Court required Plaintiff to attend regular counseling sessions at Seashore's facility. (*Id.* ¶ 11.) Plaintiff alleges that, in Summer 2012, his counselor at Seashore, Ms. Mary McCauley, sexually harassed him. (*Id.* ¶¶ 15-18.) As alleged, the harassment began with repeated text messages containing sexual content and solicitations for sexual favors. (*Id.* ¶ 16.) The harassment continued through social media and culminated in a physical altercation when Ms. McCauley allegedly pushed Plaintiff against his car and attempted to kiss him. (*Id.* ¶¶ 16-18.) Plaintiff did not give into Ms. McCauley's advances and, at the time, did not report or complain about her behavior. (*Id.* ¶¶ 19, 21.) Through his Complaint, Plaintiff does not bring any claims against Ms. McCauley and does not name her as a Defendant. (*See generally* Compl.)

Instead, Plaintiff alleges that Defendants Kelly, Roff, Andersch, and Fletcher, employees of Seashore, retaliated against Plaintiff for his refusal to engage in sexual relations with Ms. McCauley by refusing to advance Plaintiff to "phase 4" of the Drug Court, by giving him inconsistent reasons for holding him back in "phase 3," by attempting to have him admit certain information in counseling sessions, and by refusing to provide him with certain medical records. (*Id.* ¶¶ 22, 29, 43.) Additionally, Plaintiff alleges harassment by the State of New Jersey. Specifically, in or around July 2013, Plaintiff alleges that he stopped treatment at Seashore and began receiving treatment at a different facility but is still being harassed by the State. (*Id.* ¶¶ 52-54.) Plaintiff alleges this harassment took the form of being denied advancements, even after the Drug Court made promises to advance him through the program. (*Id.* ¶¶ 53-54.)

Plaintiff also alleges that his probation officer, Defendant Arey, joined in the retaliation against him by lying about a warrant for Plaintiff's arrest and falsely telling Plaintiff that he failed a drug test. (*Id.* ¶¶ 57, 61.) In addition, Plaintiff alleges that the Drug Court forced him to write a letter of apology to Defendant Fletcher and took away his express court privilege. (*Id.* ¶¶ 49, 56.)

Plaintiff's Complaint asserts four causes of action: (1) government intimidation in violation of federal civil rights, 42 U.S.C. § 1983; (2) sexual harassment in violation of the New Jersey Law Against Discrimination; (3) Seashore's Negligence; and (4) the State's Negligence. All Defendants now move to dismiss Plaintiff's Complaint.

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must determine whether the "facts

3

alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III. Analysis

#### A. The State Defendants

Plaintiff's claims for damages against the State of New Jersey and Officer Arey are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own immunity." *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007). The Eleventh Amendment precludes both legal and equitable relief, as well as all claims under § 1983. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

"The Eleventh Amendment may bar a suit even though a state is not named as a party to the action, provided the state is the real party in interest." *Walsh v. Port Auth. Trans-Hudson Corp.*, 813 F. Supp. 1095, 1096 (D.N.J. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). The state is the real party-in-interest if the named defendant is in fact an "arm of the state." *See Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). Judicial personnel acting on behalf of the state are protected by the state's sovereign immunity. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "'Probation officers are part of the judicial branch of

government' and are considered 'an arm of the court.'" *Otero v. Cnty. of Monmouth*, No. 06-3435, 2007 WL 1656851, at *3 (D.N.J. June 5, 2007) (citing *In Re P.L.*, 186 N.J. 368 (2006)); *see also Beckett v. Vega*, 2006 WL 1320043, at *3 (D.N.J. May 11, 2006).

Here, the Complaint in this matter does not expressly identify the capacity in which Plaintiff is suing Defendant Arey. Plaintiff, however, clearly identifies Defendant Arey in the Complaint as "a probation officer in Drug Court and an employee of the State." (Compl. ¶ 5.) Furthermore, Plaintiff alleges that Defendant Arey violated his rights by actions taken in Defendant Arey's official capacity, by informing him of drug test results and arrest warrants. (Compl. ¶¶ 25, 57, 61.) In addition, it is clear that any damage award would be paid from the state treasury in contravention of the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

In opposition, Plaintiff argues that sovereign immunity does not automatically protect political subdivisions of a state such as the Drug Court and that sovereign immunity does not protect a state official who violates federal law, relying on *Ex Parte Young*, 209 U.S. 123 (1908). First, Plaintiff's arguments are not persuasive. Plaintiff has not brought suit against the Drug Court, but has named the State of New Jersey as a defendant in this suit.

Second, the Supreme Court in *Ex Parte Young* carved out only a limited exception to Eleventh Amendment sovereign immunity. The doctrine only permits individuals to be sued in their individual capacities "for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 506 (3d Cir. 2001). Here, Plaintiff's argument can only be directed toward Defendant Arey, as the *Ex Parte Young* exception does not apply to Defendant State of New Jersey. In addition, Plaintiff is seeking monetary damages. Specifically, Plaintiff seeks "damages including

incidental and consequential damages, lawful pre-judgment interest, costs of suit, attorneys' fees, and punitive damages." (Compl. at 1.) Plaintiff is not seeking any prospective injunctive or declaratory relief with respect to Defendant Arey, and therefore, the *Ex Parte Young* exception does not apply to bar the application of sovereign immunity. In addition, the State Defendants have not waived their immunity, and Supreme Court precedent confirms that Congress has not abrogated the sovereign immunity of states for actions brought under § 1983. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Accordingly, the State Defendants are entitled to immunity from Plaintiff's § 1983 claim, and with respect to them, Count One is dismissed with prejudice.

As the Court has determined that it must dismiss Count One of Plaintiff's Complaint, only claims under state law remain against the State Defendants. "Under the Eleventh Amendment, a federal court may not exercise pendent jurisdiction over state law claims against a state entity or state officials, regardless of whether the relief sought is monetary or equitable, retrospective or prospective." *Camden Cnty. Recovery Coal. v. Camden City Bd. of Educ. for Pub. Sch. Sys.*, 262 F. Supp. 2d 446, 452 (D.N.J. 2003) (citing *Pennhurst*, 465 U.S. at 106). As such, the remaining state law claims against the State Defendants are dismissed.

### B. The Seashore Defendants

The Seashore Defendants also move to dismiss Plaintiff's § 1983 claim and join in the State Defendants' arguments, asserting they are entitled to either sovereign immunity or quasi-judicial immunity. In support of their position, the Seashore Defendants argue that "[s]ince the [P]laintiff is alleging that the [Seashore Defendants] moving defendants are 'symbiotic' to the State, then the [Seashore Defendants] should be entitled to the same immunities as the State." (Seashore Defs.' Reply at 8, ECF No. 8.)

"[Q]uasi-judicial immunity requires that when judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 103 (3d Cir. 2011) (internal quotation marks omitted). To determine whether an act is "judicial," a court "must look to the 'nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the [body] in [its] judicial capacity.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Quasi-judicial immunity is absolute immunity. *Dotzel v. Ashbridge*, 438 F.3d 320, 324 (3d Cir. 2006). The Third Circuit has held that "a non-judicial person who fulfills a quasi-judicial role at the court's request," such as a court-appointed doctor or psychologist or court-appointed child custody evaluator, enjoys the protection of quasi-judicial immunity. *See Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001); *McArdle v. Tronetti*, 962 F.2d 1083 (3d Cir. 1992).

In his Complaint, Plaintiff alleges that Seashore is a company "acting under the authority granted to it by the State to serve as counselors for a program for drug offenders in Ocean County, New Jersey, run by the State ("Drug Court")." (Compl. ¶ 2.) Plaintiff alleges that Defendants Roff, Kelly, Andersch, and Fletcher are employees of Seashore who denied Plaintiff advancement in the Drug Court program. (*See generally* Compl.) Specifically, in his opposition to the Seashore Defendants' motion to dismiss, Plaintiff asserts that "it is clear Seashore was in a 'symbiotic' relationship with Drug Court, and was given the power and responsibility to not only oversee the progress of Drug Court participants, but to report that progress to Drug Court." (Pl.'s Opp'n at 12, ECF No. 6.)

"Drug Courts are a creature of the judiciary." *State v. Clarke*, 203 N.J. 166, 174 (2010) (internal quotation marks omitted). "Drug Courts are specialized courts within the Superior

7

Court that target drug-involved offenders who are most likely to benefit from treatment and do not pose a risk to public safety." *State v. Meyer*, 192 N.J. 421, 428 (2007) (internal quotation marks omitted). The New Jersey Supreme Court has found that "[w]hat distinguishes Drug Courts from other courts is the oversight and personal involvement of the drug court judge in the treatment process. A team approach is a distinctive feature of Drug Court." *Id.* at 429. The judge leads the "team" of "court staff, probation officers, treatment counselors, substance abuse evaluators, and the prosecutor and defense attorney to monitor a participant's recovery." *Id.* The goal of these courts is to "address the seemingly intractable social problem presented by the scourge of drugs that has devastated countless families and is the source of so many collateral crimes." *Id.* To accomplish this goal "[p]articipants in drug court programs are subject to intensive supervision, frequent drug testing, and regular court appearances, combined with treatment and recovery services." *Id.* The funding of the Drug Court as well as for "in-patient and out-patient substance abuse treatment for criminal offenders" associated with the Drug Court is provided by the New Jersey Legislature. *Id.* at 430. Drug Court allows participants to qualify for a five-year sentence of special probation. *See State v. Hester*, 357 N.J. Super. 428, 438-39 (App. Div. 2003). The length of the supervision, however, is left to the discretion of the Drug Court judge, and early termination from the special probation is an option that the Drug Court team may consider. *Meyer*, 192 N.J. at 433.

Here, the Seashore Defendants are entitled to absolute quasi-judicial immunity because they acted at the direction of the Drug Court and performed functions integral to the judicial process of the Drug Courts, which are a part of the New Jersey judiciary. Specifically, as Plaintiff alleges, the Seashore Defendants acted under the authority of the Drug Court, were part of the Drug Court team, and reported Plaintiff's progress to the Drug Court. Plaintiff's claims

center around his being "held back" in the Drug Court process. Given their integral relationship with the Drug Court, the Court holds that the Seashore Defendants are entitled to absolute quasi-judicial immunity.

The Court has determined that it must dismiss Count One of Plaintiff's Complaint, which is the basis for federal subject-matter jurisdiction in this action. The only claims that remain against the Seashore Defendants are state law claims, and the Court declines to exercise supplemental jurisdiction over these claims. A district court's exercise of supplemental jurisdiction is discretionary. "The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point towards declining jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, all that remains are state law claims and none of the factors favor retaining jurisdiction as the Court has had minimal involvement in this case besides the current motions. New Jersey's courts are in a better position to determine the merit of Plaintiff's claims under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5, *et al.*, and the New Jersey Tort Claims Act, N.J.S.A. § 59:3, *et al.* As such, the remaining state law claims against the Seashore Defendants are dismissed.

## IV. Conclusion

For the reasons set forth above, the Court grants Defendants' motion to dismiss, and Count One of Plaintiff's Complaint is dismissed with prejudice. The remainder of Plaintiff's Complaint is dismissed without prejudice. An Order consistent with this Opinion will be entered.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: February 27, 2015